STATE OF MAINE                              SUPERIOR COURT
                                            CIVIL ACTION
KENNEBEC, ss.                               DOCKET NO. AP-05-19

                                            SKS-KEN-7/3/0,

SAVE OUR SEBASTICOOK, INC.,
*et al.*,

            Petitioners

      v.                                    **DECISION ON REVIEW**

MAINE BOARD OF ENVIRONMENTAL
PROTECTION, *et al.*,

            Respondents


      This matter comes before the court again for review of final agency action

pursuant to 5 M.R.S.A. § 11002, 38 M.R.S.A. § 346 and M.R. Civ. P. 80C. This appeal is

but the latest stop for the petitioners in their odyssey through both federal and state

administrative agencies and courts. The last time the matter was before this court was

in CV-04-184, an attempt by Save Our Sebasticook, Inc. ("SOS") to obtain relief through

a challenge to a 1998 agreement concerning the future of dams throughout the

Kennebec watershed. In the interest of judicial economy, the court will repeat much of

the factual background set forth in its earlier decision, updated to reflect the present

challenge.

                              **Background**

      Early in the last century, the Fort Halifax Dam was constructed on the

Sebasticook River in Winslow, Maine. The dam created a lake-like impoundment

approximately 5.2 miles long. The dam's primary function was generation of

hydroelectric power, but the impoundment has created the added benefit of providing a

home for fish and other aquatic species plus recreational sources, including boating,

snowmobiling, swimming and fishing. The plaintiffs, individually and as members of

SOS, are primarily owners of property abutting the impoundment and beneficiaries of its resources.

As a hydroelectric dam, the Fort Halifax Dam falls within the regulatory jurisdiction of the Federal Energy Regulatory Commission ("FERC"). In 1987, the dam owner (Central Maine Power Co. at the time) and owners of four other dams joined to form the Kennebec Hydro Developers Group ("KHDG"), which together with state agencies negotiated an agreement concerning river resources, including fish passage at the dam sites. Included in the agreement was a requirement that a permanent upstream fish passage be established at the Fort Halifax Dam by May 1, 1999. Development of this 1987 agreement was done with public notice and opportunity to participate.

In October of 1994 and again in November 1997, FERC amended or renewed the Fort Halifax Dam license and included the requirement of permanent upstream fish passage, but with no specified technology for that passage. In 1998, another KHDG agreement was entered, this time including the Kennebec Coalition agencies and Federal Wildlife and Fishery agencies. According to this agreement, the owner would have to install specific "fish lift" technology by 2003 or, in the alternative, the dam must be partially or fully breached. On September 16, 1998, FERC issued an amended license for the dam incorporating a requirement that a "fish lift" be installed by May 1, 2003.

Abutting landowner concern about implementation of the fish passage requirements began to grow as the required implementation date approached. In August 2002, FPL Energy Maine, the present owner of the dam, petitioned FERC to be allowed to surrender its license and partially breach the Fort Halifax Dam in order to allow fish passage. On January 23, 2004, FERC approved this request and issued an order approving license surrender and partial breach. A rehearing was sought and denied. The FERC decision was appealed to the United States Court of Appeal for the

District of Columbia Circuit, which appeal was dismissed in part and denied in part on December 9, 2005. *Save Our Sebasticook v. FERC*, 431 F.3d 379 (D.C. Cir. 2005).

Meanwhile, skirmishes were occurring in other administrative arenas. In August 2002, FPL filed an application with the Maine Department of Environmental Protection ("DEP") for a permit pursuant to the Maine Waterway Development and Conservation Act ("MWDCA") 38 M.R.S.A. § 630 (2005). Following development of a copious record, the Department, by its commissioner, issued a 38-page decision on July 16, 2004, approving the FPL application with conditions. Pursuant to 38 M.R.S.A § 341-D, SOS then appealed the DEP's order to the Board of Environmental Protection ("BEP"). Following a review of the record and other materials submitted, on February 15, 2005, the BEP affirmed the DEP order approving the FPL application. SOS then brought the present appeal of the BEP decision in the Superior Court pursuant to M.R. Civ. P. 80C.

## Discussion

Before addressing the merits of the appeal, the court must consider its own jurisdiction. In its decision of March 25, 2005, in CV-04-184 (noted above), this court began its discussion of the issue by noting:

> The ultimate goal of SOS is to save the Fort Halifax Dam and the man-made lake it created. This is not a goal which can be accomplished through the present litigation since regulation and even the existence of the dam is fully within the sole jurisdiction of FERC. The plaintiffs have been fully engaged in the FERC review process and are pursuing judicial review through the federal courts. This court has no jurisdiction with regard to FERC or the dam.

Since that decision, two things have happened. First, the review of the FERC decision in the federal courts appears to have been completed and without relief for SOS. See *SOS v. FERC*, as cited above. Second, the SOS appeal of the March 2005 decision to the Supreme Judicial Court was unsuccessful. See *Save Our Sebasticook, Inc. v. Dept. of Marine Resources*, No. Mem-05-142 (Oct. 12, 2005). However, the Memorandum of

Decision from the Supreme Judicial Court affirmed this court on the basis that any review under the Administrative Procedure Act would be untimely (5 M.R.S.A. § 11002(3) (2005)). No comment was made concerning the court's jurisdictional statement. Therefore, the court will consider this Rule 80C appeal on the assumption that despite FERC's pivotal role, there is still some residual state decision-making authority as reflected in the decisions of the DEP and BEP. See *Fish v. Town of Winterport*, 2003 ME 33, P. 5, 819 A. 2d 325, 326.

The court will also assume, as did the DEP and BEP, that the MWDCA is applicable to a proposal to breach or remove a hydroelectric facility, though that may not be a foregone conclusion. A simple reading of the applicable provisions of the MWDCA leave the reader with the impression that the Legislature really intended regulation of the creation of new hydroelectric facilities and the maintenance and operation of new and existing facilities, rather than the decommissioning or removal of existing facilities. See 38 M.R.S.A. § 631 Nevertheless, removal or breaching of the dam would have an effect on water quality and there does not appear to be any other statute with a more logical application to this type of proposal.

The scope of review is set forth in 5 M.R.S.A. § 11007, which provides, "The court shall not substitute its judgment for that of the agency on questions of fact." See §11007 (3). The statute also provides that the court may reverse or modify the agency decision if it was "made upon unlawful procedure," or was affected by "bias or error of law," or was "unsupported by substantial evidence on the whole record" or as "arbitrary or capricious or characterized by abuse of discretion." §11007 (3)-(7).

SOS raises a procedural issue concerning the DEP's decision to move to decision without a public hearing. However, the record indicates that there were several opportunities for public comments in November 2002, December 2003, and February

2004. In addition, written comments from the public, including SOS, were accepted and made a part of the record.

A second procedural issue concerns whether the commissioner had the discretion to refer a permit application to the BEP or not. This court finds that the commissioner had this discretion and that she properly exercised her discretion not to refer jurisdiction to the BEP. See 06-096 CMR c.2 §17 (B). The court finds no procedural illegality.

SOS's primary complaint on appeal is that the BEP, and by incorporation the DEP, did not adequately consider the approval criteria required in 38 M.R.S.A. § 636, and did not follow the statutory requirement that:

> The department shall make a written finding of fact with respect to the nature and magnitude of the impact of the project on each of the considerations under this subsection and a written explanation of their use of these findings in reaching their decision.

38 M.R.S.A. § 636 (7). On the contrary, the court finds that the Board fully met its statutory obligations to consider these criteria and specify its findings, especially when one considers that several of the criteria are clearly more applicable to beginning a new project than they are to dismantling an existing one. The DEP's decision runs to 38 pages, many of them filled with findings specifically keyed to the statutory criteria. The BEP decision adopts all of those set forth in the DEP order and adds an additional 17 pages of its own findings of fact as part of its *de novo* review. These decisions are backed by two cartons of exhibits acquired throughout the review process. Neither decision includes citations to specific page numbers in the record, but that is not required. It is sufficient if the findings are supported by substantial evidence in the record, and they are.

In the case of each statutory criterion, either the DEP or the BEP or both have made specific analysis, if the criterion is applicable. For example:

(1)     Financial capability – this criteria is really not applicable to a dam removal.

(2)     Public safety - covered on page 12 of the DEP order.

(3)     Public benefits – covered on pages 12 and 13 of the DEP order.

(4)     Traffic movement – not applicable.

(5)     Consistency with Land Use Regulation Commission – not applicable.

(6)     Environmental mitigation – covered under various discussions dealing with aquatic life, roads and bridges, erosions and sedimentation control, fish habitat and passage and overboard discharges.

Subsection 7 of section 636 requires a balancing of the advantages and adverse impacts with regard to environmental and energy considerations. Taken as a whole, the decisions address all of the statutory considerations and the balancing applied in each case. The explanations are more than adequate for review purposes.

Read together, the combined DEP/BEP decisions thoroughly cover all of the criteria set forth in section 636 to the extent that those criteria are relevant to the breaching of a dam. Obviously, SOS does not agree with the analysis, but that does not make the decisions arbitrary or capricious. Nor is the board's final decision characterized by an abuse of discretion.

Finally, SOS has suggested that the BEP did not review the FPL application de novo, as implied in 38 M.R.S.A. § 341-D(4)(A). However, the procedure described by the statute is actually a hybrid of de novo and appellate function, as follows:

> The board is not bound by the commissioner's findings of fact or conditions of law but may adopt, modify or reverse findings of fact or conclusions of law established by the commissioner. Any changes made

by the board under this paragraph must be based upon the board's review of the record, any supplemental evidence admitted by the board and any hearing held by the board.

In this case, the board's adoption of the commissioner's findings and conclusions and addition of its own by the board appears to be within its statutory authority.

For the reasons stated above, the entry will be:

Decision of the Board of Environmental Protection is AFFIRMED. REMANDED to the Department for any necessary further action.


Dated: July 31 , 2006

S. Kirk Studstrup
Justice, Superior Court

Date Filed __3/21/05__ ___Kennebec___ Docket No. ___AP05-19___
County

Action ___Petition for Review___
80C

**J. STUDSTRUP**

Gregory W. Sample, Esq. (Intervenor)
245 Commercial St  Kennebec Coalition
PO Box 9781
Portland Maine  04104
5/20/05  William Harwood, Esq./Nora Healy, Esq
PO Box 586
Portland  ME  04112-0586

___Save Our Sebasticook, et als___ vs. ___Board of Environmental Protection___

Plaintiff's Attorney

   Todd J. Griset, Esq.
   45 Memorial Circle
   P.O. Box 1058
   Augusta, Maine  04332-1058

Defendant's Attorney

   Matthew D. Manahan, Esq.
   One Monument Square
   Portland, Maine  04101

| Date of Entry | |
|---|---|
| 3/21/05 | Petition for Review, filed. s/Griset, Esq. |
| 4/11/05 | Written Appearance of FPL Energy Maine Hydro LLC, filed.s/Manahan, Esq. |
| 4/22/05 | Motion of Members of the Kennebec Coalition Severally to Intervene, filed. s/Sample, Esq.<br>Proposed Order, filed. |
| 5/2/05 | ORDER GRANTING MOTION TO INTERVENE, Studstrup, J.<br>Motion of American Rivers, Atlantic Salmon Federation, National Resources Council of Maine, Trout Unlimited and Kennebec Valley Chapter of Trout Unlimited to intervene is GRANTED.<br>Copies mailed to attys of record. |
| 5/20/05 | Entry of Appearance on behalf of AR, ASF, NRCM, TU and Kennebec Valley Chapter, filed. s/Wm. Harwood, Esq. |
| 6/3/05 | Index to Record, filed. s/Harnish, Esq.  (record in vault) |
| 6/6/05 | Notice of briefing schedule mailed to attys of record. |
| 7/13/05 | Brief of Save Our Sabasticook, Inc., et al, filed. s/Griset, Esq. |
| 8/12/05 | Brief of Respondent Party-In-Interest FPL Energy Maine Hydro LLC, filed. s/Manahan, Esq. |
| ------- | Brief of Respondents/Intervenors American Rivers, Atlantic Salmon Federatio; Natural Resources Council of Maine, Trout Unlimited, and Kennebec Valley Chapter of Trout Unlimited, filed. s/Healy, Esq. |
| 8/15/05 | Brief of Respondent Board of Enviromental Protection, filed. s/Harnish,AAG. |
| 8/30/05 | Motion of Appellants Save Our Sebasticook, Inc. for Continuance of Reply Brief Due Date, filed. s/Griset, Esq.<br>Proposed Order, filed. |
| 9/1/05 | ORDER ON MOTION FOR CONTINUANCE OF REPLY DUE DATE, Studstrup, J.<br>Time extended to September 9, 2005.<br>Copies mailed to attys of record. |
| 9/6/05 | Motion for Protection, filed. s/Harnish, AAG |

| Date of Entry | SAVE OUR SEBASTICOOK VS. DEP   Docket No.____AP05-19____ |
|---|---|
| 12/22/05 | ORDER ON MOTION TO CONTINUE, Studstrup, J.<br>Motion granted.  Hearing continued.<br>Copies mailed to attys of record.<br><br>Notice of setting for____2/24/06____<br><br>sent to attorneys of record. |
| 1/27/06 | Consented to Motion for Protection and to Continue of Respondent<br>Board of Environmental Protection, filed. s/Harnish, AAG<br>Proposed Order, filed. |
| 1/31/06 | ORDER, Studstrup, J.<br>Oral argument scheduled for 2/24/06 continued.<br>Copies mailed to attys of record. |
| 05-26-06 | Received and filed by Todd Griset, Esq. on behalf of Appellants A Motic<br>Of Appellants Save Our Sebasticook, Inc Et Al For Continuance of Oral<br>Argument Date with proposed Order. |
| 6/1/06 | Oral arguments scheduled for 6/8/06 are cancelled. To be rescheduled.<br>Copy of notice mailed to party. |
| ------ | Response of Respondents/Intervenor Kennebec Coalition to Save Our<br>Sebasticook, Inc.'s Motion for Continuance of Oral Argument Date, filed.<br>s/Harwood, Esq. |
| 6/6/06 | ORDER ON MOTION FOR CONTINUANCE, Marden, J.<br>Copies mailed to attys. |
| 6/16/06 | Notice of setting of hearing on oral arguments on 6/28/06 at 9:00am sent<br>to attys of record. |
| 7/31/06 | DECISION OF REVIEW, Studstrup, J.<br>Decision of the Board of Environmental Protection is AFFIRMED.<br>REMANDED to the Department for any necessary further action.<br>Copies mailed to attys. of record.<br>Copies mailed to Donald Goss, Garbrecht Law Library and Deborah Firestone. |